# In the United States Court of Federal Claims

No. 17-685C

(Filed: January 23, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| TENERIFE REAL ESTATE HOLDINGS, LLC, *et al.*, | \* \* \* Motion to Dismiss for Lack of Subject Matter Jurisdiction; RCFC |
| Plaintiffs, | \* 12(b)(1); Federal Deposit Insurance Corporation; 12 U.S.C. 1819(b)(1); |
| v. | \* 28 U.S.C. § 1345; Financial Institutions Reform, Recovery, and |
| THE UNITED STATES, | \* Enforcement Act of 1989; 12 U.S.C. § 1821. |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Edilberto Berrios Perez*, REC Law Offices, PSC, San Juan, Puerto Rico, with whom was *Roberto E. Berríos-Falcón*, Berrios Falcon, LCC, San Juan, Puerto Rico, for Plaintiffs.

*Daniel B. Volk*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *L. Misha Preheim*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *Jeffrey A. Sandell*, Senior Attorney, Legal Division, Litigation Section, Federal Deposit Insurance Corporation, Dallas, Texas, for Defendant.

OPINION AND ORDER

WHEELER, Judge.

Plaintiffs Tenerife Real Estate Holdings, LLC, Juan Almeida León, Francisco Almeida León, his wife Wanda Cruz, and the conjugal partnership established between them (collectively, "Plaintiffs"), filed suit in this Court alleging breach of contract and Fifth Amendment takings claims against the Federal Deposit Insurance Corporation ("FDIC") after the FDIC sold its interest in certain loans, judgments, and mortgages related to Plaintiffs' holdings. The Government has moved to dismiss Plaintiffs' amended complaint for lack of subject matter jurisdiction, arguing that claims against the FDIC when the FDIC is acting as a receiver for a failed bank are not claims against the United States. For the reasons stated below, the Court GRANTS the Government's motion to dismiss.

Background[1]

About a decade ago, Juan and Francisco Almeida León took out a $2.6 million line of credit from RG Premier Bank of Puerto Rico to secure financing for Emerito Estrada for Mr. Estrada's business. Almeida-Leon v. WM Capital Mgmt., Inc., 236 F. Supp. 3d 524, 526 (D.P.R. 2017). Mr. Estrada secured his loan through mortgage notes for various properties. Id. The incentives from that transaction included (1) a promise to the Almeidas for an expedited construction loan application; and (2) the receiving of interest on the loan. Id. Mr. Estrada apparently defaulted on his obligations after the transaction. Id. at 527. The FDIC considered this a "'highly questionable' straw borrower scheme perpetrated by the Almeida brothers." Id.

When RG Premier Bank failed in 2010, the FDIC was appointed receiver. Am. Compl. ¶ 2. On that same day, the FDIC sold RG Premier Bank to Scotiabank, excluding notes it wanted to investigate in its role as regulator. Id. Juan Almeida León's notes and credits were among those investigated. Id. ¶¶ 2–3. In 2012, the FDIC, acting as receiver, sued Juan Almeida León in the U.S. District Court for the District of Puerto Rico to recover on the defaulted loan and to execute the collateral mortgage notes. Almeida-Leon, 236 F. Supp. 3d at 527; Am. Compl. ¶ 5. That case resulted in a default judgment of $2,828,850.11 against Juan Almeida León. Am. Compl. ¶¶ 5, 10. Francisco Almeida León and his wife, Wanda Cruz, then sued Mr. Estrada in state court to collect damages for Mr. Estrada's default. Almeida-Leon, 236 F. Supp. 3d at 527.

The FDIC also discovered that Juan Almeida León divested his interest in the mortgage notes securing the default judgment to Francisco Almeida León and Tenerife Real Estate Holdings, LLC, ("Tenerife"), which were the same notes that formed the subject of Francisco Almeida León and Ms. Cruz's case against Mr. Estrada in state court. Id. The FDIC further discovered that the properties subject to the mortgages were set to be auctioned as a result of the state court judgment obtained by Francisco Almeida León and Ms. Cruz. Id. Therefore, the FDIC sought and received a temporary restraining order from the district court to prevent the auction from taking place so that the FDIC eventually could receive payment on the default judgment. Id.

Tenerife owns a mortgage note which encumbers EER-IPR Realty in a principal amount of $2,635,000. Am. Compl. ¶ 25. The Superior Court of Puerto Rico issued judgment upon that property in a principal amount of $2,221,245.93. See id. In another case before the Superior Court of Puerto Rico, on October 10, 2012, Francisco Almeida

---

[1] The Court draws the facts as stated in the Background section of this Opinion from Plaintiffs' amended complaint, cited herein as "Am. Compl." Further, due to the complexity of the allegations found in Plaintiffs' amended complaint, the Court also draws facts from the Background section of the case Almeida-Leon v. WM Capital Mgmt., Inc., 236 F. Supp. 3d 524 (D.P.R. 2017). Alemdia-Leon is based on the same factual background as the case currently before this Court. Nevertheless, for purposes of resolving the Government's motion to dismiss, the Court takes as true only the facts alleged in Plaintiffs' amended complaint.

León and Ms. Cruz obtained judgment valued at three junior mortgage notes and mortgage foreclosure of EER-IPR.  Id. ¶ 26.  Plaintiffs allege that "[a]t all pertinent times the EER-IPR Realty has been leased and generating rent."  Id. ¶ 28.  Juan Almeida León acquired an undivided 50 percent interest in the credits, rights, promissory notes, junior mortgages, and judgment upon the EER-IPR Realty.  Id. ¶ 29.

On June 22, 2014, Plaintiffs entered into an agreement by which Juan Almeida León would assign title in fee simple of a 50 percent undivided interest in the mortgage notes encumbering EER-IPR to the FDIC as receiver.  Id. ¶ 32.  That property would be sold in a foreclosure sale to pay off the default judgment against Juan Almeida León.  Id.  As laid out in that agreement, the FDIC agreed to obtain a Phase I Environmental Site Assessment within 120 days.  Id. ¶ 33.  Then, on July 28, 2014, Plaintiffs assigned Juan Almeida León's 50 percent undivided interest in the property, as well as the three mortgage notes, rights, and judgment, for payment.  Id. ¶ 34.  Pursuant to the July agreement, the FDIC promised to conduct the assessment "without delay" so the foreclosure sale could proceed.  Id. ¶ 38.  Plaintiffs later discovered that when the FDIC entered into the July 28, 2014 agreement, it allegedly knew that it had already performed a Phase I Environmental Site Assessment on July 9, 2014, which FDIC counsel attended.  Id. ¶ 39.  Plaintiffs, ignorant to the fact that the assessment had already been completed, sought and found other potential purchasers of the property willing to pay $8,130,000.[2]  Id. ¶¶ 43–44.  Plaintiffs similarly found potential tenants willing to pay approximately $25,000 per month in rent.  Id. ¶ 45.

After the 120 days to obtain the environmental assessment had expired, Plaintiffs' counsel sent a letter to FDIC counsel on October 29, 2014, "demanding [] the foreclosure public sale of the EER-IPR."  Id. ¶ 46.  The FDIC did not respond to this letter.  Id. ¶ 47.  That same month, Plaintiffs' counsel wrote to FDIC counsel demanding that the FDIC perform its obligations under the contract, noting that the FDIC had delayed obtaining the environmental assessment and insisting that they proceed with the sale so that the judgment could be paid.  Id. ¶ 48.  The FDIC informed Plaintiffs that a Phase II assessment may be needed, but never ordered or requested one.  Id. ¶¶ 49, 50.  On January 29, 2015, unknown to Plaintiffs, Ed Mertic at the FDIC decided that the foreclosure sale would not take place, that the FDIC would breach the July 28, 2014 agreement, and that the FDIC would sell its interest in that agreement.  Id. ¶ 52.  Without knowledge of this decision, Plaintiffs notified FDIC counsel by letter that despite the delay in obtaining the environmental assessment, Plaintiffs secured outside funds to pay the judgment owed to the FDIC in an effort to mitigate the FDIC's breach of their agreements.  Id. ¶ 60.  The FDIC likewise did not respond to this letter.  Id. ¶ 61.

Finally, on January 14, 2016, Francisco Almeida León sent a letter to FDIC counsel declaring that Plaintiffs considered the FDIC to be in default of their agreement for not having procured the environmental assessment and not carrying out the foreclosure sale.

---

[2] Following the July 28, 2014 agreement, the FDIC had the property appraised and valued it at $8,130,000. Am. Compl. ¶ 40.

Id. ¶ 62.  Upon receiving this letter, FDIC counsel informed Plaintiffs that the FDIC sold its rights under the assignment contract.  Id. ¶ 63.  Plaintiffs discovered, through their own research, that the FDIC sold such rights on December 10, 2015, to WM Capital Management, Inc. for $92,480.71.  Id. ¶ 64.

Shortly thereafter, on January 29, 2016, Plaintiffs filed their first Proof of Claim ("POC") with the FDIC.  Id. ¶¶ 22–23.  The FDIC denied the claim on November 22, 2016, and Plaintiffs filed a second POC on February 16, 2017, after allegedly discovering that the FDIC "intentionally" and "in *dulus*" breached the agreements.  Id. ¶ 23.  The FDIC denied Plaintiffs' second POC on July 11, 2017.  Id.

Procedural History

Plaintiffs filed their initial complaint in this Court on May 23, 2017, Dkt. No. 1, approximately six months after the FDIC denied their first POC.  The Government moved to dismiss Plaintiffs' complaint on September 22, 2017.  Dkt. No. 9.  On October 13, 2017, Plaintiffs moved to file an amended complaint as a matter of course pursuant to Rule 15(a)(1)(B) of the Court of Federal Claims, Dkt. No. 10, which this Court granted.  See Dkt. No. 13.  Plaintiffs filed their amended complaint on November 11, 2017.  Dkt. No. 14.  In their amended complaint, Plaintiffs allege that the FDIC's actions and omissions have deprived them of their property rights, and that the FDIC's alleged breach of contract has caused them to suffer monetary damages.  Am. Compl. ¶ 12.  The Government moved to dismiss the amended complaint for lack of subject matter jurisdiction on November 6, 2017, Dkt. No. 15, arguing primarily that claims against the FDIC when the FDIC is acting as a receiver for a failed bank are not claims against the United States.  See Def.'s Mot. at 1, 5–6.  The parties completed briefing on the motion to dismiss on December 22, 2017, and the Court heard telephonic oral argument on January 11, 2018.

Discussion

A. Standard of Review

The Tucker Act ordinarily is the focus of subject matter jurisdiction in this Court, and states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

4

28 U.S.C. § 1491(a)(1).  The Tucker Act itself "does not create a cause of action."  RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir. 1998).  Thus, a plaintiff must identify a "separate source of substantive law that creates the right to money damages" in order to invoke the Court's jurisdiction over a claim.  Greenlee County, Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir. 2007) (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005)).  Failure to establish jurisdiction under the Tucker Act requires the Court to dismiss under Rule 12(b)(1).  Outlaw v. United States, 116 Fed. Cl. 656, 658 (2014).  When deciding a Rule 12(b)(1) motion to dismiss, a court must assume all the undisputed facts in the complaint are true and draw reasonable inferences in the non-movant's favor.  Erikson v. Pardus, 551 U.S. 89, 91 (2007).  Further, the plaintiff bears the burden of establishing facts sufficient to invoke this Court's jurisdiction by a preponderance of the evidence.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  In determining whether a plaintiff has met this burden, the Court may look "beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists."  Lechliter v. United States, 70 Fed. Cl. 536, 543 (2006) (quoting Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)).

B.  This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Amended Complaint.

In its motion to dismiss, the Government argues that this Court lacks subject matter jurisdiction over Plaintiffs' amended complaint because the FDIC, when acting as a receiver for a failed bank, is not the United States for purposes of the Tucker Act.  See Def.'s Mot. at 1, 5–6.  Plaintiffs contend that jurisdiction in this Court is proper because the FDIC acted as both regulator and receiver and, in any event, the FDIC is an agency of the United States "in any capacity . . . for purposes of section 1345 of [T]itle 28."  Pl.'s Resp. at 2 (citing 12 U.S.C. §§ 1819(b)(1), (b)(2)(A)).

A clear line of precedent in the Supreme Court, Federal Circuit, and this Court holds that the FDIC is not the United States when it acts as a receiver for a failed bank.  See, e.g., O'Melveny & Myers v. FDIC, 512 U.S. 79, 85 (1994) ("But the FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its *own* rights rather than, as receiver, the rights of [American Diversified Savings Bank] (emphasis in original)); Frazer v. United States, 288 F.3d 1347, 1354 (Fed. Cir. 2002) (holding that the FDIC was not the Government because it was not acting in a governmental capacity); Allen v. United States, No. 13-642C, 2014 WL 3510751, at *3 (Fed. Cl. July 15, 2014) ("The Supreme Court has explained that when acting as a receiver, 'the FDIC is not the United States.'" (quoting O'Melveny & Myers, 512 U.S. at 85)); Ameristar Fin. Servicing Co. v. United States, 75 Fed. Cl. 807, 812 (2007) ("[T]he Court finds that the FDIC . . . acting in its capacity [] as receiver . . . is not the United States."); see also AG Route Seven P'ship v. United States, 57 Fed. Cl. 521, 534–35 (2003); Ambase Corp. v. United States, 61 Fed. Cl. 794, 796–97 (2002).  Here, it is clear that the FDIC acted in its capacity as a receiver for a failed bank and not in a governmental capacity when it disposed

of RG Premiere Bank's assets.  Plaintiffs admit as much in their pleadings before this Court.  See, e.g., Am. Compl. ¶ 21 ("The actions of the FDIC averred in this complaint were primarily as receiver for RG Premiere Bank . . . ."); Pl.'s Resp. at 7 ("The facts and events upon which the complaint is based on occurred while the FDIC acted as receiver of the closed bank, RG Premiere Bank.").  What's more, Plaintiffs overstate the role the FDIC played as a regulator in this case.  While it may be true that the FDIC acted in a regulatory capacity when it investigated transactions related to RG Premiere Bank through the use of subpoenas, Am. Compl. ¶¶ 6–7, Plaintiffs fail to allege sufficient facts to show that these actions were undertaken by the FDIC as a government regulator on behalf of the United States.  Rather, it is clear that the FDIC took on this regulatory role in its capacity as receiver for the failed RG Premiere Bank to further its own investigation into the matter.

Moreover, Plaintiffs' reliance on 12 U.S.C. § 1819(b)(1) for the proposition that the FDIC is an agency of the United States "in any capacity . . . for purposes of section 1345 of [T]itle 28" is misguided and does not confer jurisdiction on this Court to hear Plaintiffs' claims.  28 U.S.C. § 1345 states, "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  However, the U.S. Court of Federal Claims is not a district court; therefore, 28 U.S.C. § 1345 does not apply to this case.  Thus, as the Government correctly notes, "[this] provision neither provides for jurisdiction in this Court nor does it transform [Plaintiffs'] claim into one against the United States."  Def.'s Rep. at 4.

Lastly, Plaintiffs' reliance on Slattery v. United States, 635 F.3d 1298 (Fed. Cir. 2011) to confer jurisdiction on this Court is likewise misguided.  In Slattery, the Government argued that the FDIC was not an agency of the United States because it did not operate based on appropriated funds.  See id. at 1299–1300.  The Federal Circuit disagreed and held, *en banc*, that "[t]he jurisdictional criterion is not how the government entity is funded or its obligations met, but whether the government entity was acting on behalf of the government."  Id. at 1301.  Here, as discussed above, the FDIC stepped into the shoes of a failed bank as receiver and at no time acted on behalf of the United States Government.  As such, Plaintiffs' claims against the FDIC are not claims against the United States, and this Court therefore lacks subject matter jurisdiction over Plaintiffs' amended complaint.

C.  Alternatively, FIRREA Precludes This Court From Exercising Jurisdiction Over Plaintiffs' Amended Complaint.

In the alternative, the Government argues that even if Plaintiffs' claims against the FDIC were construed as claims against the United States, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA" or "the Act") precludes this Court from exercising jurisdiction over Plaintiffs' amended complaint.  See Def.'s Mot. at 1, 6–7.  FIRREA sets up a mandatory administrative claims process for any claims resulting

from failed savings and loan institutions or claims related to any act or omission of the FDIC as receiver.   The Act mandates that claimants who have exhausted their administrative remedies can challenge an agency's disallowance of their claims by filing suit "in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia" within 60 days "of any notice of disallowance of such claim . . . ."  12 U.S.C. § 1821(d)(6)(A)(ii).  Further, the Act states,

> [i]f any claimant fails to . . . file suit on such claim . . . before the end of the 60-day period described in subparagraph (A), the claim shall be deemed disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

Id. § 1821(d)(6)(B).

Application of FIRREA's statutory mandate is straightforward in this case. Plaintiffs filed their first claim with the FDIC on January 29, 2016, Am. Compl. ¶¶ 22–23, which the FDIC denied on November 22, 2016.  Id. ¶ 23.  Plaintiffs then had 60 days to file suit in the appropriate district court or in the U.S. District Court for the District of Columbia to challenge the disallowance of that claim.  See 12 U.S.C. §§ 1821(d)(6)(A)(ii), (d)(6)(B).  Plaintiffs did neither; instead, they filed suit on May 23, 2017—nearly six months after receiving the notice of disallowance of their first claim—and filed suit in this Court, which is not a district court.  As such, Plaintiffs lost any "further rights or remedies with respect to [their] claim."[3]  See id. § 1821(d)(6)(B).  Plaintiffs cannot circumvent this 60-day deadline by filing a second claim with the FDIC at a later date based on new theories; nor can they argue that FIRREA's statutory mandate does not apply to them or that it imposes an unconstitutional condition upon them, as these arguments have no basis in the law.  Thus, FIRREA precludes this Court from exercising jurisdiction over Plaintiffs' amended complaint.

## Conclusion

For the reasons stated above, this Court lacks subject matter jurisdiction over Plaintiffs' amended complaint.   Accordingly, the Government's motion to dismiss is GRANTED.  The Clerk of the Court is directed to close this case.  No costs.

---

[3] The Court notes that transferring this case to the proper district court is inappropriate at this time.  Had Plaintiffs filed their amended complaint in this Court before the 60-day deadline to do so expired on January 21, 2017, then transfer may have been appropriate.  See 28 U.S.C. § 1631.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge